The case for today is number 19-2049, United States v. Battiste. And for that, we will hear again from Mr. Hillis. May it please the Court, Counsel. Because the government did not allege and prove that Mr. Battiste knew he had a prior conviction that prohibited him from possessing a firearm, the District Court plainly erred by convicting Mr. Battiste of violating 922G1. Grand juries exist to protect people against unsupported charges. A defendant is entitled to have a grand jury return an indictment based on evidence that is supported by the charged offense's elements. That is to say, facts support the elements in its information that's offered to the grand jury for its consideration so that it can properly issue or decide to refuse to issue an indictment. In this case, the government did not know that it had to prove Mr. Battiste's knowledge of prohibited status. So it wouldn't have tendered evidence to the grand jury, and the grand jury wouldn't have facts to support the element that it had identified, such that the grand jury could validly indict Mr. Battiste. So for that reason, we believe that the indictment is defective. And it is a structural defect because it's an error that affects the grand jury's process. And we rely on Weaver v. Massachusetts for that. And the position is as simple as that in our view, but I will, of course, entertain any questions the Court has. Well, I think we've had a good discussion of Rahif in the previous argument. I would only say that, you know, going down the line, first the indictment, then other aspects of cases such as jury instructions and the like, it's the same issues. You know, it appears to me to be a plain error analysis, and even though there was certainly error, we know that, now that we've had an authoritative interpretation of the statute, that's not the end of the discussion. And it's very hard on this record to imagine that Mr. Battiste didn't know that he was a felon. And, indeed, there's also evidence, if it's relevant, that he knew he couldn't have guns. So it's the plain error inquiry that seems most relevant here. If I could push back slightly and then move forward, Your Honor, I think the noble review would be appropriate under the Seventh Circuit Abdul case in U.S. v. Washington from the D.C. Circuit. And, furthermore, if it were a matter of structural error, I don't know that a plain error would apply or that it would prevent relief. But with those being said, I'm happy to talk about the remaining elements, since the government has conceded for plain error review, that the first two plain error factors are satisfied here. So with that, I'll move forward. And I'll begin by saying I think that the Court is right to observe the potential differences between what the government needs to prove under Rahate. And I believe that the latter, more expansive requirement, is supported by Rahate. The Supreme Court knows very well how to write opinions. If something more was required – excuse me, if something less was required for the government to prove, it would have said so. I'm sure the Supreme Court would have said so in Rahate. But the fact that the question remains here today suggests that the Supreme Court was leaving open the second option, and I believe that's the more faithful reading of Rahate, Your Honor. So that's an important consideration for today. And I will furthermore say that, yes, while my client has a prior conviction, and that was subject to a Rahate stipulation, that does not go to his knowledge. And, of course, we know under cases like Buckmeyer and Burnett with restorations rights or public authority defenses, cognitive defect offenses, that people who were aware – excuse me, having been made aware of this additional Rahate issue may have approached their defenses considerably different in a given case. And that, again, is a concern for us here today. But it's hard to see how that really applies. It seems like a theoretical objection more than one that applies to Mr. Baptiste. We've got a fairly clear record from the jury trial, and he seems – I mean, it seems like a jury could easily have found that he knew he wasn't supposed to have guns. There's his bag. You know, he's signaling to people he's trying to run away. He's doing all kinds of things that make it quite reasonable to think not only does he know that he has felony convictions or had them at the relevant time, but also that he wasn't supposed to have guns. That's a lot of inferences to draw from his conduct. And if the jury was properly instructed, perhaps that's what they would have determined, Your Honor, but they weren't. And so that's the central difficulty here with respect to the third primary factor is because the jury wasn't correctly instructed. It never reached a decision based on proof beyond a reasonable doubt, which is required, what, under Winship or Jackson v. Virginia. And the government is being allowed, if we don't vacate this conviction, to have a conviction stand where it didn't provide the necessary information. And I believe that that is an entirely different scenario than Vaughn, Cotton, Nader, Johnson. In those cases, if there's a matter of materiality, and if it's Nader, I think it is, where they said that the evidence was overwhelming. Well, that was information that was in front of the jury. That's very different than here, where the information was not in front of the jury about what Mr. Batiste actually knew. And so to try to align his mens rea and scienter with something about the quantity of drugs or the materiality of a statement, I think those are very different things. You cannot show that just because there's a large quantity of drugs that the person knew something else about the drugs. You've established quantity, but I don't think you've established anything about scienter. So I draw that distinction, I think it's an important one. Mr. Hillis, in applying the plain error standard to an element of the offense, may we consider the pre-sentence report with respect to convictions? I don't think so, Your Honor. And so I know that there's cases about pleas where that's been allowed, but I think the relevant universe of facts when a jury is considering an issue is what was presented to the jury, and that's in the pages of the trial transcript. That would often be true, I think, but we're dealing here with a unique form of evidence that's both reliable, namely at least convictions identified in a pre-sentence report where the defendant would have had both the opportunity and motive to disagree with them at the time of sentencing if there had been an issue, and also with uniquely prejudicial evidence if it had been presented to the jury. That would have been my client's right, though, Your Honor, to go forward to a jury and have all that bad information come in if they had something that was necessary beyond your hate. But the fact is that evidence wasn't tendered here, and to allow a searching view of a PSR whose information was never presented to the jury and upon which you have to make inferences about his mental state anyway, I think that's not the true course to accept here in a case where somebody has elected to go to trial. In the Williams case, you could look at it and say nobody in their right mind would have elected to go to jury trial on this case. My client did elect to go to jury trial on it, and therefore the government had the requirement to produce proof beyond a reasonable doubt on all of the elements to support the 922G1 conviction. It didn't happen. So, Mr. Hillis, you're about a minute and a half to go. I will exert the balance of my time, then, Your Honor. Thank you. Thank you. All right. I'm not sure I'm going to get this right. Mr. Appleby-Battacargi, something? That's very good, Your Honor. Yes, good morning. May it please the Court, Suresh Appleby-Battacargi for the United States. I'd like to start, Your Honors, with the question of what rehafe requires. I'd start by answering that question looking to what this Court has already held in United States v. Williams. There, the Court, in interpreting rehafe and what it requires specifically held, and I quote, for Williams, that means the government would have needed to prove or he, meaning Williams, to admit that he knew he had been convicted in any court of a crime punishable by imprisonment for a term exceeding one year. So this Court has already adopted the narrower reading of what rehafe requires, and that's also just consistent with rehafe and what the decision held. Rehafe did not turn 922G from a general intent crime into a specific intent crime. Rehafe did not hold that the knowledge requirement as to prohibited status was also a willfulness requirement where the government would have to prove the defendant knew not only that he was a prohibited person or that he fell within the relevant prohibited category, but that the impact of falling within that category was that federal law prohibited him from possessing a firearm. And again, rehafe cannot operate as an exception to the general rule that ignorance of the law is not a defense, but that's precisely what the Court would invite if it read rehafe more expansively, and that more expansive reading the government respectfully submits would be contradicted by what the Court has already said in Williams. I just don't, I'm not sure how much attention was paid to this issue. I recognize that Williams did say that, but it's, I'm not sure this has been discussed thoroughly anywhere. And to the extent Williams is not dispositive on the issue, Your Honor, what I would say is, again, rehafe does not say that 922G includes a willfulness requirement. 922G is not a specific intent statute, and as rehafe itself states, the focus of rehafe as expressed at page 6 of the Court's opinion was that without knowledge of the status, the defendant may lack the intent needed to make his behavior wrongful. And that, again, is a general intent principle, not a specific intent, willfulness-type inquiry. And so the government would respectfully request that the Court, in line with all other courts that have addressed the issue to date, interpret rehafe narrowly as requiring a defendant's knowledge only that he belongs to the relevant class of prohibited persons and not what the consequence is of belonging to that relevant class. Judge Wood, earlier in the argument, you expressed some, you expressed some skepticism about whether Rule 12b-3 really operates as waiver in the context of indictment errors. I won't belabor that point too much other than just to cite this Court's opinion in Dothard, where the Court held that the defendant waived his indictment claims by virtue of his guilty plea and cited United States v. Wheeler. That's the same case the government cites in its answering brief, and Wheeler stands for the proposition that indictment errors such as failure to state an offense are non-jurisdictional, and by failing to file a pretrial motion to dismiss under Rule 12b-3, the indictment error is waived. But even if the Court applies plain error review to the indictment error, and even if the Court applies plain error review to the instructional error claim, which it should given that these are all forfeited errors, the outcome should not in any way be different than Williams and Dothard just because this is a trial case versus a plea case. At bottom, the defendant bears the burden of establishing that any Rahafe error affected his substantial rights, and on this record, there's no reason to believe that a jury would have reached a different verdict under Rahafe. First off, the defendant signed a stipulation admitting that he was a convicted felon at the time of his offense, and a reasonable jury could infer from that stipulation that the defendant knew he had been convicted of a felony, particularly where he signed that stipulation. By entering into that stipulation, the defendant precluded the government from proving up his multiple prior convictions, which here resulted in 21 criminal history points, placing him safely within the highest possible criminal history category. Even in his own sentencing memorandum, the defendant admits that he served two years of a four-year sentence for vehicular hijacking, which occurred before the offense conduct that's charged here. And so by his own admission, the defendant spent over a year of his life in prison, simply not reasonable on this record that the defendant has a viable Rahafe defense that would have changed the outcome of the proceedings below. And perhaps most critically, the defendant even now does not claim that he did not know he had been convicted of a felony at the time of his offense conduct. Under plain error review, defendant provides this court no basis to overturn the conviction below, and for that reason, this court, as it already has in Williams, Dothert, and Mancius, should affirm the judgment below. Unless the court has any specific questions related to the instructional error or indictment error claims, I respectfully submit on the arguments tendered in the briefs. Hearing no questions, I will thank you for your argument and return to Mr. Hillis if he has any final thoughts. Yes, Your Honor. We agree with Chief Judge Wood. We agree with you that Williams is in control, and it didn't really address the issue that you highlighted today. Rafe doesn't invite ignorance to the law defense, since there is no such thing, of course, but it requires proof beyond reasonable doubt in the determination of all four of 922G1 elements, and that wasn't done here. That does affect substantial rights because now somebody has been convicted without proof beyond reasonable doubt on all four statutory factors, and not to say nothing of the grand jury defect returning an indictment without the necessary evidence of that four factor either. The supervening decision doctrine does allow the challenges to be made, despite what the government says about filing a motion to dismiss for a defective indictment. Rafe didn't get decided until after my client went to trial. He had no opportunity to file anything until Rafe, and so for the reasons that you've stated, we ask this court to vacate his conviction, and if necessary, remand for a new trial. All right. Thank you very much. Thanks to both counsel. The court will take this case under advisement, and we will be in recess. Thanks to all. We're sorry. Your conference is ending now. Please hang up. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.